UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

COUNSEL FINANCIAL SERVICES, LLC,

                        Plaintiff,
v.                                                          **DECISION AND ORDER**
                                                                       09-CV-150S

THE DOBSON FIRM, LLC, KENNETH P. DOBSON,
and JUDY CASTILLO DOBSON,

                        Defendants.

## I. INTRODUCTION

On December 29, 2008, Plaintiff Counsel Financial Services, LLC commenced this action against Defendants The Dobson Firm, Kenneth P. Dobson ("Dobson") and Judy Castillo Dobson ("Castillo Dobson") in the New York State Supreme Court, Erie County, pursuant to New York Civil Procedure Law and Rules § 3213, by filing a motion for summary judgment in lieu of a complaint. Therein, Plaintiff requests entry of judgment against Defendants in the amount of $427,444.92, as a consequence of Defendants' default on a Third Amended and Restated Term Promissory Note ("Note") and personal Guaranty of Payment and Performance ("Guaranty"). Plaintiff also seeks attorney's fees, costs, and disbursements.

1

Defendants removed this action to federal court on February 13, 2009. Presently before this Court are Defendants' Motion to Dismiss and Plaintiff's Motion for Summary Judgment. For the reasons discussed below, both motions are denied.

## II. BACKGROUND

**A.  Facts**

In adjudicating Defendants' Motion to Dismiss, this Court assumes the truth of the following factual allegations contained in the complaint. See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Plaintiff, a New York limited liability company, is a commercial lending institution specializing in loans to law firms. Defendant The Dobson Firm, an Oregon limited liability company with its principal place of business in Washington County, Oregon, is a law firm. (Notice of Removal, ¶5.) Both of the individual Defendants are Oregon citizens. Id.

Plaintiff alleges that it extended The Dobson Firm a credit line of $411,510.42 upon execution of the Note on July 17, 2008. ("Affidavit of Megan Brooks Payne ("Payne Aff. I"), ¶ 3.) Pursuant to the Note's terms, The Dobson Firm agreed to repay that sum to Plaintiff with interest. Id. Plaintiff also contends that, on July 17, 2008, Defendants Dobson and Castillo Dobson signed the Guaranty, personally guarantying the Note. Id. at ¶ 4.

Plaintiff asserts that The Dobson Firm defaulted on the Note, as defined by Section 1(d), by failing to pay interest for October and November 2008. (Payne Aff. I, ¶ 4; Reply Affidavit of Megan Brooks Payne ("Payne Aff. II"), ¶ 5.) Additionally, Plaintiff contends that the individual Defendants are each in default of the terms of the Note and the Guaranty.

(Payne Aff. I, ¶ 6.) Plaintiff maintains that, as of April 20, 2009, the total amount due on the instruments was $425,348.78. (Payne Aff. II, Ex. B.) This figure is the sum of $406,178.57 (principal due, pursuant to Section 3), $18,267.37 (unpaid interest for October and November 2008), and $912.84 (late fees on unpaid interest, pursuant to Section 2).[1] Id.

**B.     Procedural History**

Plaintiff commenced this action in the Supreme Court of the State of New York, Erie County, via a summons and motion for summary judgment in lieu of complaint, pursuant to NY CPLR § 3213. This section provides that "when an action is based upon an instrument for the payment of money only or upon any judgment, the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint." NY CPLR § 3213. Plaintiff's motion for summary judgment in lieu of a complaint was supported by the Payne Aff. I and the Affidavit of Philip B. Abramowitz ("Abramowitz Aff."). These affidavits explain the terms of the Note and the Guaranty, the facts establishing Defendants' default, and the amounts due to Plaintiff as of December 18, 2008. (Payne Aff. I, ¶¶ 3-11; Abramowitz Aff., ¶¶ 3-6.)

On February 13, 2009, Defendants removed Plaintiff's action to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. On February 18, 2009, Defendants submitted the Declaration of Kenneth Dobson ("Dobson Decl."), the Declaration of Judy Castillo Dobson ("Castillo Dobson Decl."), a Statement of Contested Facts ("Defendants' Facts"), and a

---

[1] At the time this action was originally filed, Plaintiff asserted that, as of December 18, 2008, the total amount due on the instruments was $427,444.93. (Payne Aff. I, ¶¶ 6-9; Ex. A.) This figure was the sum of $411,510.42 (the principal due), $11,451.59 (unpaid interest for October and November 2008), and $4,482.92 (late fees on unpaid interest). Id. But Plaintiff acknowledges that, as of April 20, 2009, the amount Defendants allegedly owe is $425,358.78. (Payne Aff. II, ¶¶ 5-6.) This figure reflects Defendant The Dobson Firm's payment of $24,459.47 to Plaintiff on January 27, 2009. Id.

3

Motion to Dismiss.[2] In response, Plaintiff filed a Motion for Summary Judgment, which was supported by the Reply Affidavit of Philip B. Abramowitz ("Reply Aff. Abramowitz"), the Payne Aff. II, a Memorandum of Law ("Plaintiff's Mem."), and a Statement of Undisputed Facts ("Plaintiff's Facts"). On July 17, 2009, Defendants filed a Response to Plaintiff's Motion for Summary Judgment in Lieu of Complaint ("Defendants' Response"). On August 3, 2009, Plaintiff filed a Supplemental Reply Affidavit ("Plaintiff's Reply Aff.").

### III. DISCUSSION

**A.    Plaintiff's Summary Judgment in Lieu of a Complaint and Defendants' Motion to Dismiss**

**1.    Plaintiff's Summary Judgment In Lieu of a Complaint**

Plaintiff maintains that "there are no procedural impediments to granting summary judgment in favor of Plaintiff." (Plaintiff's Mem., p. 3.) More specifically, Plaintiff asserts that Defendants are subject to the personal jurisdiction of this Court, venue is proper in New York, and New York law governs this action. Id. at 5-7. Plaintiff asserts that personal jurisdiction, venue and choice of law were all "subject[s] of an express bargained-for agreement between the parties" that is preserved in the Note and the Guaranty. Id. at 4. Plaintiff contends that Section 10 of the Note and Section 4.2 of the Guaranty establish that New York law governs both contracts. Id. at 4-5. Plaintiff asserts that Section 11 of the Note and Section 4.9 of the Guaranty expressly provide that the "State of New York, Erie County will be the exclusive venue for any claims or disputes between [the parties]

---

[2] When originally filed, this document was entitled "Response to Plaintiff's Motion for Summary Judgment in Lieu of Complaint." On April 1, 2009, this Court found that "Defendants' motion is essentially a Motion to Dismiss the Complaint under Rule 12 [of the Federal Rules of Civil Procedure], and will be treated as such." (Docket No. 9.)

. . . that the Defendants expressly submit to personal jurisdiction" in New York courts and Defendants "waive any objections based on personal jurisdiction, venue and/or forum non-conveniens." Id. at 5.

### 2. Defendants' Motion to Dismiss

Defendants suggest that "preliminary questions regarding jurisdiction, venue and choice of law" make Plaintiff's motion for summary judgment "premature." (Motion to Dismiss, p. 3.) Defendants insist that they are only subject to the personal jurisdiction of Oregon courts and that Oregon is the appropriate venue for this action. Id. Defendants maintain that they lack any connection to New York because they are Oregon citizens, all business dealings between the parties occurred in Oregon, the Note and the Guaranty were signed in Oregon, and the loan was used to finance Oregon cases. Id.

Defendants also contend that the forum-selection and consent-to-jurisdiction clauses in the Note and the Guaranty are unenforceable because they are "unreasonable and unjust." Id. at 3-4 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972)). Specifically, Defendants maintain that they lack the financial "resources to hire New York counsel to defend the action or travel back and forth to Buffalo to make court appearances themselves" and that Plaintiff obtained overly favorable terms as a result of unequal bargaining power. Id. at 4.

### B. Analysis

Defendants bring their Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, which provides for dismissal of a complaint for lack of personal jurisdiction and improper venue, respectively.

### 1. Personal Jurisdiction

When challenged with a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. See In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994). If the court relies on pleadings and affidavits to resolve the motion, rather than a full evidentiary hearing, the plaintiff need make only a *prima facie* showing of personal jurisdiction to carry its burden. See Distefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999) (citing Marine Midland Bank v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)); Langenberg v. Sofair, No. 03-CV-8339, 2006 WL 2628348, at *2 (S.D.N.Y. Sep. 11, 2006).

In determining whether the plaintiff has made this showing, the court is not obligated to draw "argumentative inferences" in the plaintiff's favor. Robinson, 21 F.3d at 507 (citing Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)). But the pleadings and affidavits, and all doubts arising therefrom, are construed in the light most favorable to the plaintiff. See CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986); see also Langenberg, 2006 WL 2628348, at *5 ("courts are authorized to rely on affidavits submitted by the parties in deciding a Rule 12(b)(2) motion to dismiss").

It is well-settled that "[p]arties may consent to personal jurisdiction through forum selection clauses in contractual agreements." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95 (2d Cir. 2006); Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) ("And it is settled . . . that parties to a contract may agree in

6

advance to submit to the jurisdiction of a given court"). Generally, a plaintiff must prove that a non-resident defendant has sufficient minimum contacts with the forum state in order to rebut the defendant's claim that a court lacks personal jurisdiction. Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 370 (2d Cir. 1997) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) and Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)). But "the minimum contacts analysis is unnecessary so long as the clause is accompanied by a consent to personal jurisdiction." Hearst Entm't, Inc. v. Multichannel Distribution Servs. A.V.V., No. 96-CV-0310, 1997 WL 72150 (S.D.N.Y. Feb. 19, 1997); see also Maresk, Inc. v. Neewra, Inc., 554 F.Supp.2d 424, 447 (S.D.N.Y. 2008) (holding that a valid forum-selection clause "amounts to [non-resident's] consent to jurisdiction"); Monsanto Co. v. McFarling, 302 F.3d 1291 (4th Cir. 2002) (holding that a consent to jurisdiction clause is enforceable "unless the party challenging it clearly demonstrates that it is invalid or that enforcement would be unreasonable or unjust"). Consent-to-jurisdiction clauses often accompany forum-selection clauses because a court must maintain personal jurisdiction over the defendant in order for a plaintiff to effect a change of venue pursuant to 28 U.S.C. § 1404. See Hearst Entm't, Inc., 1997 WL 72150, at *2 n.3. In other words, a "matter could not be transferred under Section 1404 to the selected forum unless personal jurisdiction existed separately." Id.

In this Court's view, Defendants are required to submit to the personal jurisdiction of either this Court or the New York State Supreme Court, County of Erie. As an initial matter, both the Note and the Guaranty are valid, enforceable contracts. The language of both consent-to-jurisdiction clauses is clear and unambiguous.

7

Section 11 of the Note reads:

PART OF THE CONSIDERATION FOR NEW VALUE RECEIVED . . . BORROWER EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN ERIE COUNTY, AND BORROWER HEREBY WAIVES ANY OBJECTION WHICH BORROWER MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION. . . .

Section 4.9 of the Guaranty provides that:

The guarantor hereby irrevocably and unconditionally agrees that any suit, action or proceeding arising out of or relating to this Guaranty shall only be brought in the Supreme Court of the State of New York located in the County of Erie, which shall be deemed to be the court of sole and exclusive venue for the bringing of any legal action, and Guarantor waives right to object to jurisdiction within the foregoing forum by Lender . . . the agreement of the Guarantor to submit to personal jurisdiction within the State of New York and County of Erie.

By executing the Note and the Guaranty, Defendants consented to personal jurisdiction in New York. Moreover, they offer no facts or argument that personal jurisdiction in New York is "unreasonable or unjust." M/S Bremen, 407 U.S. at 15. Accordingly, this Court finds that Defendants have expressly consented to personal jurisdiction and have waived any argument that personal jurisdiction is improper.

**2. Venue**

In M/S Bremen, the Supreme Court held that because forum-selection clauses help eliminate uncertainty in commerce, they are entitled to a presumption of enforceability, unless "enforcement would be unreasonable and unjust, or . . . the clause was invalid for such reasons as fraud or overreaching." 407 U.S. at 15; see also Bense v. Interstate

8

Battery Sys of Am., Inc., 683 F.2d 718, 721 (2d Cir. 1982) (applying M/S Bremen standard to contractual dispute between domestic parties in non-admiralty context).

Determining the enforceability of a forum-selection clause involves a four-part analysis. Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007). First, it must be determined whether the clause was reasonably communicated to the party resisting enforcement. Id. Next, the nature of the clause must be identified — mandatory or permissive. Id. With a mandatory forum-selection clause, the parties "agree in advance on a forum that is exclusive of all others, [and] the choice of forum is accorded the M/S Bremen presumption of enforceablity." Aguas Lenders Recovery Group v. Suez, S.A., 585 F.3d 696, 700 (2d Cir. 2009) (citing Phillips, 494 F.3d at 386). A permissive forum-selection clause "designates a forum in advance, but does not preclude a different choice, [and] the M/S Bremen presumption of enforceability does not apply." See id.; Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974, 979-80 (2d Cir. 1993).

Third, it must be determined "whether the claims and parties involved in the suit are subject to the forum selection clause." Philips, 494 F.3d at 383. "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." Id. (citing Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1362-63 (2d Cir. 1993)).

Finally, it must be determined whether the "resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" Philips, 494 F.3d at 383-84 (quoting M/S Bremen, 407 U.S. at 15).

Defendants' objection to venue is a nonstarter. Both forum-selection clauses are plainly and expressly set forth in the Note and the Guaranty. Bolding, capitalization, and large font were used to explicitly convey the clauses. The plain language, conspicuous formatting, and Defendants' signatures ensured that the forum-selection clauses were overtly communicated to Defendants. Moreover, these clauses provide greater notice and are more clearly communicated to Defendants in this case than other forum-selection clauses upheld by courts within the Second Circuit. See, e.g., Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 9 (2d Cir. 1995) (holding that an unsigned forum-selection clause printed in small typeface on the back of a travel ticket was enforceable); Spataro v. Kloster Cruise, Ltd., 894 F.2d 44, 45-47 (2d Cir.1990) (per curiam); McQuillan v. "Italia" Societa Per Azione Di Navigazione, 386 F.Supp. 462, 465-66 (S.D.N.Y.1974).

Moreover, this Court finds that both forum-selection clauses are mandatory. The parties expressly designated the New York State Supreme Court, Erie County, as the "sole and exclusive venue" and "exclusive venue" for actions involving the Note and the Guaranty, respectively. (Payne Aff. I Exs. A, B.) In other words, the terms of the Note and the Guaranty preclude the parties from bringing claims arising out of these contracts in any venue other than New York Supreme Court, Erie County. Moreover, the Note and the Guaranty satisfy the Second Circuit's requirement that an enforceable, mandatory forum-selection clause indicate the parties' intent to make jurisdiction exclusive. See John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc., 22 F.3d 51, 52-53 (2d Cir. 1994) (holding that a forum-selection clause was permissive because it did not expressly indicate that the designated jurisdiction was exclusive).

Further, the claims and parties involved in this suit are subject to the forum-selection clause. Plaintiff initially commenced this action in New York State Supreme Court, Erie County, "based upon instruments for the payment of money only which are now due and payable." (Plaintiff's Motion for Summary Judgment in Lieu of Complaint, 1.) The "instruments" refer to both the Note and the Guaranty, which are subject to the forum-selection clauses. Because the forum-selection clauses were communicated to Defendants, are mandatory, and cover the claims and parties involved in the present dispute, they are presumptively enforceable.

Finally, this Court finds that Defendants have failed to show that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." M/S Bremen, 407 U.S. at 15. That is, the Bremen exceptions to enforcing a forum-selection clause are not met. Defendants argue that forcing them to travel to New York would be unduly burdensome and would deny them their day in court because they lack the resources to travel and retain counsel. (Motion to Dismiss, p. 4.) This, however, does not create an issue of fact with respect to the enforceability of the forum-selection clause. See, e.g., Chiarizia v. Xtreme Rydz Custom Cycle, 43 A.D.3d 1353, 1354, 842 N.Y.S.2d 117 (4th Dep't. 2007) (holding that "great economic hardship" for resisting party to litigate in a forum state was an insufficient basis for resisting party to claim a denial of his day in court by enforcing a forum-selection clause). Moreover, even assuming Defendants' financial resources would be strained by having to litigate in New York, "mere inconvenience and expense of traveling are not, standing alone, adequate reasons to disturb the parties' contractual choice of forum." Weiss v. Columbia Pictures Television, Inc., 801 F.Supp. 1276, 1279 (S.D.N.Y. 1992).

Similarly, Defendants offer no facts suggesting that the clauses are unenforceable for "such reasons as fraud or overreaching." M/S Bremen, 407 U.S. at 15. Instead, Defendants assert that the forum-selection clauses are unenforceable because of the "unequal bargaining power of the parties" stemming from Defendants' lack of "choice at the time but to accept all of plaintiff's demands and enter into the new contract." (Defendants' Motion, p. 4.) This argument fails because there is no evidence of coercion or force and Defendants do not allege any other misconduct by Plaintiff or that the inclusion of the forum-selection clause in either the Note or the Guaranty "was the product of fraud or coercion." A.I. Credit Corp v. Liebman, 791 F.Supp. 427, 430 (S.D.N.Y. 1992) (citing Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14 (1974)). Moreover, Defendants' argument that the contract was tainted by the parties' unequal bargaining power cannot withstand scrutiny because (1) Dobson and Castillo Dobson are both lawyers, and (2) the governing authority permits enforcement of forum-selection clauses in contracts of adhesion, where there is little, if any, bargaining power involved. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593-95, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); Person v. Google, 456 F.Supp.2d 488, 496-97 (S.D.N.Y. 2006) (holding that a forum-selection clause embedded within a "click-wrap" contract is enforceable).[3]

Accordingly, for the foregoing reasons, this Court finds that the forum-selection clause contained in both the Note and the Guaranty are enforceable against the Defendants. Because the forum-selection clauses are enforceable, Defendants have

---

[3] A "click wrap" contract requires parties to manifest assent by clicking on an icon. Brodsky v. Match.com LLC, 09-CV-5328NRB, 2009 WL 3490277, at *3 (S.D.N.Y. Oct. 28, 2009).

consented to New York as the appropriate venue for this action. Consequently, no evidentiary hearing is necessary.

### 3. Summary Judgment

Plaintiffs have also moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which will be denied. Procedurally, this litigation is in its infancy and Defendants are entitled to discovery. Defendants raise material questions of fact, but have not had the opportunity to commence discovery. The Second Circuit has denied motions for summary judgment as premature in cases where the nonmoving party did not have "a fully adequate opportunity for discovery" at the time the moving party sought summary judgment. Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989); see Sutera v. Schering Corp., 73 F.3d 13, 18 (2d Cir.1995) (reversing summary judgment granted "before any discovery had taken place"); see also Ammcon, Inc. v. Kemp, 826 F.Supp. 639, 647 (E.D.N.Y. 1993). In Trebor, the Second Circuit held that "[t]he nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment. The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." Trebor, 865 F.2d at 511.

Defendants maintain that numerous factual issues preclude summary judgment. Defendants first assert that there are genuine questions as to whether Plaintiff, "by its long history in accepting late payments, waived its right under the contract to declare Defendants in default and accelerate the loan." (Motion to Dismiss, p. 5.) Plaintiff contends that the Note and the Guaranty expressly preclude any change in the parties' agreement.

13

But waiver "may be accomplished by express agreement or by such conduct or failure to act as to evince an intent not to claim the purported advantage." Dice v. Inwood Hills Condominium, 237 A.D.2d 403, 655 N.Y.S.2d 562 N.Y.A.D. (2d Dept. 1997) (citing Hadden v. Consolidated Edison Co. of N.Y., 45 N.Y.2d 466, 469, 410 N.Y.S.2d 274, 382 N.E.2d 1136 (1978)).

Second, Defendants allege that genuine issues of material fact remain as to whether the 18% interest rate charged by Plaintiff in the Note constitutes usury. (Motion to Dismiss, p. 6.) In response, Plaintiff contends that this defense is barred by General Obligations Law § 5-521. (Plaintiff's Reply Aff., ¶¶ 10-13.) This section states that "no corporation shall hereafter interpose the defense of usury in any action." N.Y. GOB Law § 5-521(1). Defendants, however, maintain that this defense is applicable.

Third, Defendants contend that summary judgment is inappropriate because there are genuine questions as to how Plaintiff calculated the amount that Defendants allegedly owe. Plaintiff maintains that as of April 20, 2009, Defendants owe $425,358.78 — the sum of $406,178.57 on the outstanding principal, plus $18,267.37 in total interest, plus $912.84 in late fees. (Payne Aff. II, Ex. B.) This is merely a "conclusory allegation" that fails to satisfy the requirement that a party seeking summary judgment in lieu of a complaint must provide "documentary evidence or an explanation of how the indebtedness was calculated." HSBC Bank USA v. IPO, LLC, 735 NYS 2d 531, 532 (NY App. Div. 2002).

Fourth, Defendants contend that summary judgment is also inappropriate because their partial payment to Plaintiff after the action was filed created "genuine questions as to how much is really left owing on the contract." (Motion to Dismiss, p. 6.) Discovery is

necessary in order to determine what effect, if any, Defendants' January 27, 2009 payment of $24,459.47 had upon the total amount due.

Accordingly, in light of the above, Plaintiff's Motion for Summary Judgment will be denied.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is denied. Plaintiff's request for summary judgment is also denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 3) is DENIED.

FURTHER, that Plaintiff's Motion for Summary Judgment (Docket No. 10) is DENIED.

SO ORDERED.

Dated:     September 2, 2010
           Buffalo, New York

                                               /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                                    Chief Judge
                                              United States District Court